IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM KLEIN, | : CIVIL ACTION |
| Plaintiff, | : NO. 12-4809 |
| v. | : |
| COUNTY OF BUCKS, et al., | : |
| Defendants. | : |

## MEMORANDUM

**Jones, II, J.**                                                                 **March 19, 2013**

William Klein, a former Bucks County Deputy Sheriff, brings this action against the County of Bucks, Bucks County Commissioners Robert G. Loughery, Charles H. Martin, and Diane M. Ellis-Marseglia, LCSW (collectively "the Commissioners"), Sheriff Edward Donnelly, Chief Deputy Sheriff Dennis Shook and Lieutenant Thomas Waltman. His Amended Complaint asserts claims of retaliation under the Pennsylvania Whistleblower Law ("PWL"), retaliation under the First Amendment pursuant to 42 U.S.C. § 1983, and a violation of the Family and Medical Leave Act ("FMLA"). Presently before this Court is Defendants' Motion to Dismiss the PWL and § 1983 claims, as well as the request for punitive damages in the FMLA claim. For the reasons that follow, the Motion is granted in part.

## I. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). After the Supreme

Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable of the alleged misconduct." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("All civil complaints must contain more than an unadorned the-defendant-unlawfully-harmed-me accusation."). Moreover, "the factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8 [of the Federal Rules of Civil Procedure]." *Villegas v. Weinstein & Riley, P.S.*, 723 F. Supp. 2d 755, 756 (M.D. Pa. 2010) (quoting *Phillips*, 515 F.3d at 232).

## II.   FACTS

Klein began working as a Bucks County Deputy Sheriff on June 12, 2006. (Am. Compl. ¶ 15.) In 2010, Klein reported to Deputy Oliver Groman that Lt. French, a firearms instructor and armorer for the Sheriff's Department ("Department") was not certified for this position. (*Id.* ¶ 18.) Also in 2010, due to his concern for the safety of officers and citizens, as well as legal liability for the County, Klein made complaints to Defendants Commissioner Diane M. Ellis-Marseglia and Sheriff Edward Donnelly that the Department did not have policies and procedures related to the use of force, detention, and other procedures. (*Id.* ¶ 28.) At the time he made these complaints, Klein was assigned to the open warrants unit. (*Id.* ¶ 31.) He alleges that two other members of this unit, Deputy James McAndrew and Sergeant Gary Browndorf, also made complaints about corruption. (*Id.* ¶ 32.) Shortly after making his complaints, the software

Klein used in his work was discontinued by Defendants, making his work more difficult, and when his computer malfunctioned it was neither repaired nor replaced. (*Id.* ¶ 35.) When the vehicle he used for work was damaged it was not repaired and he had difficulty obtaining gasoline. (*Id.* ¶ 37.) He was criticized for failing to sign in and out and other minor issues which had never before been raised. (*Id.* ¶ 39.) He also alleges that a private investigator began a yearlong investigation into his activities, which was paid for by a Bucks County political fundraiser and the girlfriend of "Defendant French."[1] (*Id.* ¶ 40.)

On October 15, 2010, Klein was stabbed by a criminal while attempting to serve a warrant. (*Id.* ¶ 42.) He alleges he was recommended for, but denied, the law enforcement purple heart. (*Id.* ¶ 43.) He also alleges that Defendants chose to challenge whether his injury was work related for purposes of worker's compensation benefits. (*Id.* ¶ 44.)

In February 2011, Klein gave testimony on behalf of Sgt. Browndorf, who was brought up on disciplinary charges, and thereafter filed a grievance against the County. (*Id.* ¶¶ 45-46.) He alleges that Defendant Lt. Waltman screamed at him that he would not be compensated for his time testifying at the hearing. (*Id.* ¶ 47.) In March 2011, upon learning that Lt. French was not a certified armorer, Klein inspected a number of weapons and determined that they were not properly maintained, repaired or inspected. (*Id.* ¶ 50.) He informed Sheriff Donnelly of his findings, but was told "don't worry about it, it's in the past." (*Id.* ¶ 51.) Not satisfied with this response, he notified a County investigator. (*Id.* ¶ 52.) Sheriff Donnelly thereafter sent Klein an email advising him not to send out any documents, reports or memos to any person or agency outside the Department without his approval. (*Id.* ¶ 53.) In the summer of 2011, Klein alleges he was criticized for his paperwork and complained that his work vehicle was unsafe. (*Id.* ¶¶ 56-57.) Soon after making these complaints, he was transferred from the warrant unit to the

---

[1] There is no defendant named "French" listed in the Amended Complaint.

3

detention unit, the least desirable unit for a deputy sheriff. (*Id.* ¶ 58.) When he requested a certain shift, his request was denied. (*Id.* ¶¶ 58-59.) He was also denied a request for vacation time and his key to the armory was taken away. (*Id.* ¶¶ 60-61.) While working in the detention unit, he observed another armed deputy asleep in court while he was guarding prisoners. (*Id.* ¶ 63.) He reported the conduct and was told he was a troublemaker and had ratted out a fellow union member. (*Id.* ¶¶ 65-66.)

On July 28, 2011, while still assigned to the warrant unit, Klein witnessed Sgt. Browndorf assault a person he was arresting. (*Id.* ¶¶ 67-71.) He alleges that at this time the Department had no policy or procedure related to the use of force or reporting the use of force. (*Id.* ¶ 70.) The Department did have a custom or practice that (1) the officer in charge was to prepare all written documents related to the arrest and (2) subordinate officers did not prepare such documents. (*Id.* ¶¶ 76-77.) The incident led to a grand jury proceeding and Klein was called to give testimony on September 22, 2011. (*Id.* ¶ 82.) He alleges that "[o]utside of his duties as an officer, and not as part of his subpoenaed testimony," he told the grand jury that the County had no policies, procedures or written rules of conduct related to the use of force, reporting the use of force, and other important safety matters. (*Id.* ¶ 83.)

On August 1, 2011, Defendant Shook was hired as Chief Deputy Sheriff of Bucks County. (*Id.* ¶¶ 11, 88.) On Shook's first day in office, Klein met with him to discuss the complaints he had made and the retaliation he had suffered. (*Id.*) On November 15, 2011, Shook interviewed Klein about the incident that occurred on July 28, 2011. (*Id.* ¶ 90.) Klein alleges that Shook terminated him from his employment on February 21, 2012, but that he was not notified of the termination until March 8, 2012. (*Id.* ¶¶ 91-92.) The reason for his termination was his failure to report the July 28, 2011 assault by Sgt. Browndorf. (*Id.* ¶ 92.)

4

Klein alleges that this reason was a pretext for the complaints he had made and his grand jury testimony about Department policies and procedures. (*Id.* ¶ 93.) Finally, he alleges that the Commissioners, who had final decision-making authority for Bucks County and the Department during the relevant time period (*id.* ¶ 9), had knowledge of his speech and the other Defendants' acts of retaliation, but did not take any action against any of the other Defendants for their retaliatory treatment toward him. (*Id.* ¶¶ 94-95.)

## III. DISCUSSION

### a. The PWL Claim

Defendants argue that Klein's allegations that he was terminated after making complaints about the Department must be dismissed because he fails to sufficiently plead that his acts of whistleblowing were causally connected to his termination. Specifically, Defendants point to the time lapse between the bulk of Klein's complaints and his termination to support their argument that he has failed to plausibly plead causation.[2] While many of Plaintiff allegations discuss acts of whistleblowing that are temporally remote from the date of his termination from employment, the Amended Complaint does contain sufficient allegations of timely whistleblowing activity, combined with a historical pattern of antagonism, to support causation under the PWL.

The PWL provides that "[n]o employer may discharge, threaten or otherwise discriminate or retaliate against an employee . . . because the employee . . . makes a good faith report or is

---

[2] This Court notes that the PWL contains a short 180 day statute of limitations period. *See* 43 P.S. § 1424(a) (stating "A person who alleges a violation of this act may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both, within 180 days after the occurrence of the alleged violation."). The 180–day period is mandatory, and courts have no discretion to extend this time period. *Jackson v. Lehigh Valley Physicians Grp.*, Civ. A. No. 08–3043, 2009 WL 229756, at *7 (E.D. Pa. Jan. 30, 2009) (collecting cases). Klein filed this action on August 20, 2012. While Defendants assert the whistleblowing activity was too temporally remote to demonstrate causation, there is no argument that the action, which was filed on the 180th day following Klein's termination, is untimely.

5

about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste." 43 P.S. § 1423(a). The Pennsylvania Supreme Court has held that, "to make out a prima facie case of retaliatory termination pursuant to the Whistleblower Law, a plaintiff must 'show by concrete facts or surrounding circumstances that the report [of wrongdoing or waste] led to [the plaintiff's] dismissal, such as that there was specific direction or information received not to file the report or [that] there would be adverse consequences because the report was filed.'" *Golaschevsky v. Dep't of Envt'l Protection*, 720 A.2d 757, 759 (Pa. 1998) (quoting *Gray v. Hafer*, 651 A.2d 221, 225 (Pa. Cmmw. Ct. 1994). Under the PWL, "wrongdoing includes not only violations of statutes or regulations that are 'of the type that the employer is charged to enforce,' but violations of any federal or state statute or regulation, other than violations that are 'of a merely technical or minimal nature.'" *Id.* (citing 43 P.S. § 1422 (1986)). In order to make out a case of retaliatory termination, a plaintiff must plead: (1) wrongdoing, and (2) a causal connection between the report of wrongdoing and dismissal. *Forrest v. Owen J. Roberts Sch. Dist.*, Civ. No. 09-3014, 2011 WL 1549492, at *13 (E.D. Pa. Apr. 1, 2011) (citing *Golaschevsky*, 720 A.2d at 759).

At first blush, Klein's allegations of wrongdoing in 2010 and 2011, and his complaints to superiors about them during that time frame, appear too distant in time to support the causation element of a PWL claim based upon his termination in February 2012. Specifically, his complaints that (1) the firearms instructor and armorer lacked the necessary certification; (2) the Department did not have policies and procedures related to the use of force, detention, and other procedures; (3) weapons were not properly maintained, repaired or inspected; (4) his work vehicle was unsafe; (5) he gave grand jury testimony criticizing the County for having no policies, procedures or written rules of conduct related to the use of force, reporting the use of

force, and other important safety matters; and (6) he had suffered retaliation (made to Chief Shook on Shook's first day of duty), are temporally remote from the termination of his employment on February 21, 2012. A significant lapse in time between whistleblowing activity and an employer's adverse action can lead to a finding that there is no causation between the two. *See, e.g., Moyer v. Pa. Turnpike Comm'n*, Civ. A. No. 10-456, 2010 WL 5174963, at *9 (M.D. Pa. Dec. 15, 2010) (holding that eight month time span between whistleblowing and termination was clearly insufficient to establish a causal connection); *Gooden v. Pennsylvania*, Civ. A. No. 10-3792, 2010 WL 5158996, at *5 (E.D. Pa. Dec. 10, 2010) (speech occurring three years before employment contract was not renewed was so distant in time from the alleged retaliation that the amended complaint did not "suggest" causation). However, where the plaintiff alleges a pattern of employer antagonism over time arising from the whistleblowing activity, courts will not ignore earlier incidents. *See Wise v. Pennsylvania Dep't of Transp.*, Civ. A. No. 07-1701, 2010 WL 3809858, at *15 (W.D. Pa. Sept. 23, 2010) (holding in a § 1983 claim that retaliatory action nine months after employee report of waste was not itself suggestive of a causal link between the two events; however, defendants' pattern of antagonism spanning the nine-month time period after plaintiff's initial report of wrongdoing was sufficient for a reasonable jury to find causation (citing *Malone v. Economy Borough Mun. Auth.*, 669 F. Supp. 2d 582, 603-04 (W.D. Pa. 2009) (finding seven-month time span alone was not unusually suggestive of temporal proximity between protected activity and an alleged retaliatory act, but holding that a pattern of antagonism coupled with a seven-month period between the protected activity and retaliatory act satisfied the causation element))). Accepting as true Klein's allegations that he was consistently subjected to adverse treatment once he began raising complaints of impropriety within the Department, this Court finds that the pattern of antagonism,

7

coupled with the timing of his termination approximately three months after his grand jury testimony, is sufficient to raise a plausible inference of causation based upon the entire record.[3]

b.  The Section 1983 Claim

Defendants raise several arguments concerning Klein's § 1983 claim that he suffered retaliation at the hands of state actors as a result of exercising his free speech rights pursuant to the First and Fourteenth Amendments. Specifically, they assert (1) that he was not engaged in protected speech; (2) that even if he were engaged in protected speech, he has failed to sufficiently assert facts to establish municipal liability or that the Commissioner Defendants or Lt. Waltman were personally involved in the alleged constitutional violation; and (3) that the individual defendants are entitled to qualified immunity.

1.  Protected Speech

The United States Court of Appeals for the Third Circuit recently had occasion to reiterate the law governing First Amendment retaliation claims:

> Our jurisprudence governing political association retaliation claims under the First Amendment has its origins in the Supreme Court's "trilogy" of "political patronage cases." *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 663 (3d Cir. 2002) (citing *Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980); *Rutan v. Republican Party of Ill.*, 497 U.S. 62 (1990)). From these cases and their progeny, "we have derived a three-part test to establish a claim of discrimination based on political patronage in violation of the First Amendment." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007). First, the

---

[3] Defendants also argue that the PWL claim should be dismissed against the Commissioner Defendants because the Commissioners have no authority to terminate a deputy sheriff and thus cannot be liable for any retaliatory act against Klein. (Def. Mem. at 14 n.9 (citing 16 P.S. §§ 3450(b), 4203, and 4205)). This citation misses the mark. The PWL provides its own definition of an "employer" that may be subject to liability thereunder. *See* 43 P.S. § 1422 (defining an "employer" to be a "person supervising one or more employees, including the employee in question; a superior of that supervisor; or an agent of a public body; and defining a "public body" to include a "county, city, township, regional governing body, council, school district, special district or municipal corporation, or a board, department, commission, council or agency"). As Klein has pled that the Commissioners have "final decision-making authority" (*see* Am. Compl. ¶ 9), they may plausibly meet the definition of his employer for purposes of the PWL claim.

> plaintiff must establish that "she was employed at a public agency in a position that does not require political affiliation." *Id.* Second, the plaintiff must show that she engaged in conduct protected by the First Amendment. *Id.* And finally, the plaintiff must prove that the constitutionally-protected conduct was a substantial or motivating factor for the adverse employment action. *Id.*

*Montone v. City of Jersey City*, Nos. 11–2990, 11–3516, 2013 WL 856359, at *4-5 (3d Cir. March 8, 2013). Under the second prong of the test, "[a] public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951, 1958 (2006)). Importantly, a "public employee does not speak 'as a citizen' when he makes a statement 'pursuant to [his] official duties.'" *Id.* at 242 (quoting *Garcetti*, 126 S.Ct. at 1960). "'Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.'" *Id.* (quoting *Rankin v. McPherson*, 483 U.S. 378, 384 (1987) (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983))).

This Court concludes that several of Klein's statements do not qualify as protected speech.[4] Klein's complaints concerning the internal operations of the Department are alleged to have been communicated in his capacity as an employee and not as a citizen. Specifically, the two sets of allegations concerning his contention that firearms instructors lacked proper certification were voiced in his official capacity and were communicated to his superiors at the Department as part of his duties. (Am. Compl. ¶¶ 17-27; 50-55.) His complaint that the

---

[4] Defendants make no argument concerning the other two prongs of the Supreme Court's "trilogy."

9

Department did not have policies and procedures related to the use of force were also voiced in his capacity as a Department member to his Department supervisors and their elected superiors. (*Id.* ¶¶ 28-29.) The stabbing incident involved no allegation of protected speech. (*Id.* ¶¶ 42-44.) His allegation concerning a sleeping deputy, although arguably involving an issue of public safety concern, is also alleged to have been voiced in his official capacity "up the chain of command." (*Id.* ¶¶ 63-66.) Accordingly, Defendants' Motion is granted with regard to these allegations.

Conversely, the allegations concerning Klein's testimony at the Browndorf disciplinary hearing (*id.* ¶¶ 45-49) and his grand jury testimony regarding the Browndorf assault (*id.* ¶¶ 67-83) satisfy the second prong of the Third Circuit's three-part *Galli* test to establish a claim of discrimination based on political speech. *See Reilly v. City of Atlantic City*, 532 F.3d 216, 231 (3d Cir. 2008) (stating "When a government employee testifies truthfully, s/he is not 'simply performing his or her job duties,' *Garcetti*, 547 U.S. at 423, 126 S.Ct. 1951; rather, the employee is acting as a citizen and is bound by the dictates of the court and the rules of evidence. Ensuring that truthful testimony is protected by the First Amendment promotes 'the individual and societal interests' served when citizens play their vital role in the judicial process. *Id.* at 420, 126 S.Ct. 1951. Thus, the principles discussed in *Garcetti* support the need to protect truthful testimony in court."). Having found that these incidents plausibly constitute protected speech, the next question to be addressed is whether Klein has sued the appropriate defendants.

2.  Municipal Liability

Bucks County and the Commissioners, who allegedly had final decision-making authority for the County (*see* Am. Compl. ¶ 9), argue that, for the claims that can be read to assert protected speech, Klein has failed to allege any facts to trigger municipal liability under §

10

1983.[5] "[T]here are two ways that a plaintiff can establish municipal liability under § 1983: policy or custom." *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007). Policy is established when it is shown that "a decision maker possessing final authority to establish municipal policy with respect to the action" has "issue[d] an official proclamation, policy, or edict." *Id.* (quoted case, internal quotation marks, and internal brackets omitted). A custom is established when, in the absence of a formal policy, it can be shown "that a given course of conduct . . . is so well settled and permanent as virtually to constitute law." *Id.* at 156 (internal quotation marks and quoted case omitted). Custom is usually established by knowledge and acquiescence, *id.*, that is, knowledge by the policymaker of an unconstitutional practice by lower level employees and acquiescence in that practice. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996) (custom is established by policymakers being "aware of similar unlawful conduct in the past, but fail[ing] to take precautions against future violations") (quoted case omitted). In either case, the "'plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.'" *Watson*, 478 F.3d at 156. A plaintiff must also prove that the policy or custom was the proximate cause of the injury. *Id.*

Klein has failed to meet his burden of plausibly alleging that the County and the Commissioners as its political authority had a custom of retaliation against whistleblowers. The

---

[5] This Court notes that Klein has failed to specify in his Amended Complaint whether he sues the Commissioners in their official or individual capacities. From his allegation that the Commissioners constitute "the political authority for the County" (*see* Am. Compl. ¶ 8), this Court infers that Klein has sued them in their official capacities. Accordingly, his claims against them must be deemed to be claims against the County itself. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978) (holding that a suit against public officers in their official capacities "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent . . . ."). However, in the forthcoming section discussing the allegations of personal involvement of each defendant, this Court will also address whether Klein has plausibly plead claims against the Commissioners in their individual capacities.

11

Amended Complaint's only factual allegations of policy and custom are that: (1) the Department had a custom and practice that the officer in charge of an investigation, and not any subordinate officer, prepared all written documents related to an arrest (Am. Compl. ¶¶ 76-77); (2) the Department had no policy concerning the use of force or reporting the use of force (*id.* ¶ 83); and (3) the Commissioners, as the governing authority for the County, had a policy or custom of retaliating against members of the Department who spoke out about problems in the Office or testified adversely to the County and the Department. (*Id.* ¶ 99.) The first two allegations do not concern facts that might raise a plausible inference of municipal liability under § 1983 for retaliation. The third allegation states only a legal conclusion. To support his claim, Klein argues in his Response only that the County had a "pattern of retaliatory practices *against Plaintiff* [that] were sufficiently continuous and prevalent to constitute [a] custom." (Resp. at 10 (emphasis added).[6]) The allegations that Klein himself was the subject of retaliation are clearly insufficient to allege a well settled and permanent custom. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose [municipal] liability . . . , unless proof of the incidents includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. . . ."); s*ee also Turner v. City of Philadelphia*, 22 F. Supp. 2d 434, 437 (E.D. Pa. 1998) (stating that where plaintiff did not identify any incident other than the one in which he was himself involved that would tend to show the existence of a custom of acquiescing

---

[6] Klein also cites to several paragraphs of his Amended Complaint to support his argument that he has adequately alleged a custom of retaliation based on assertions that other deputies who made complaints about corruption in the Department, namely Deputy McAndrew and Sgt. Browndorf, also suffered retaliation. (Resp. at 10-11 (citing Am. Compl. ¶¶ 31, 45-46).) Nothing in the cited paragraphs asserts retaliation against these individuals for exercising their First Amendment rights. Browndorf is alleged to have been the subject of a disciplinary hearing, but Plaintiff does not allege why he was so disciplined. (Am. Compl. ¶ 45.) While Klein asserts that McAndrew made complaints, there is no allegation that McAndrew suffered any retaliation. (*Id.* ¶ 32.)

in unconstitutional behavior, it was not a fair inference that authority had such a custom). Accordingly, the § 1983 retaliation claim fails to state a claim upon which relief may be granted against the County and the Commissioners in their capacities as its political authority.

          3.      Personal Involvement

In order for § 1983 liability to be appropriate, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement "can be shown through allegations of personal direction or of actual knowledge or acquiescence," and must be pled with particularity. *Id.*, *see also Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980) (holding civil rights complaint adequate where it states time, place, conduct and persons responsible); *Hall v. Pa. State Police*, 570 F.2d 86, 89 (3d Cir. 1978) (holding a plaintiff's mere assertions that his rights have been violated "without facts upon which to assess the substantiality of the claim" were insufficient to support a § 1983 action).

The allegations against Defendants Loughery and Martin clearly fail this test. Other than the introductory paragraph identifying them as Commissioners, Klein makes no mention of them at all in the Amended Complaint. The allegations against Defendant Ellis-Marseglia also fail. Klein alleges only that he complained to her that the Department did not have policies and procedures related to the use of force, detention, and any other procedures. (Am. Compl. ¶ 28.) He makes no allegation that she personally retaliated against him. Indeed, as with the other Commissioners, Klein only makes the conclusory allegations that each "[u]pon information and belief . . . had knowledge of all of the speech made by the Plaintiff and all of the retaliation on behalf of the Defendants," and failed to take any action against the other Defendants for their

retaliatory treatment toward him. (*Id.* ¶¶ 94-95.) While pleading upon information and belief has been held to be appropriate under the *Twombly/Iqbal* regime where the facts required to be pled are uniquely in the control of the defendant, *see Wright v. Lehigh Valley Hosp. & Health Network*, Civ. A. No. 10-431, 2011 WL 2550361, at *3 (E.D. Pa. June 23, 2011) (citing *Brinkmeier v. Graco Children's Prods. Inc.*, Civ. A. 09-262, 2011 WL 772894, at *6 (D. Del. Mar. 7, 2011), *Simonian v. Blistex, Inc.*, Civ. A. 10-1201, 2010 WL 4539450, at *3 (N.D. Ill. Nov. 3, 2010) (recognizing that nothing in *Twombly* or *Iqbal* suggests that pleading on information and belief is "necessarily deficient")), where "these averments are merely 'a formulaic recitation of the elements of a cause of action' . . . [r]eliance by [Plaintiff] on information and belief cannot transform legal conclusions into plausible factual allegations." *Id.* at *3 (citing *Essex Ins. Co. v. Miles*, Civ. A. 10-3598, 2010 WL 5069871, at *3 (E.D. Pa. Dec. 3, 2010) (quoting *Iqbal* at 1950)). That is exactly the problem with Klein's allegations against the Commissioners: a conclusory recitation that they had knowledge of the alleged retaliation of other Defendants and failed to take any action, fails to state any actual facts. Accordingly, the § 1983 claim against them must be dismissed.

Similarly, the claim against Lt. Waltman is subject to dismissal. The only allegation of personal involvement against him is that Waltman "screamed" at Klein that he would not be paid for the time he spent testifying at the Browndorf disciplinary hearing, and that Klein testified to the hearing panel that he heard Waltman say "it doesn't matter whether Browndorf did anything wrong or not, the Sheriff said to find him guilty no matter what." (Am. Compl. ¶¶ 47-48.) Importantly, Klein makes no allegation that he was entitled to be paid for his time at the hearing or that he actually was not paid for his time at the hearing. Thus, there is no plausible allegation that Waltman retaliated against him based upon his exercising his right to testify.

14

4. Qualified Immunity

Finally, this Court must address whether Klein's remaining viable First Amendment allegations, concerning retaliation arising from his testimony at the Browndorf disciplinary hearing and his grand jury testimony regarding the Browndorf assault, plausibly establish that the remaining Defendants on the claim, Sheriff Donnelly and Chief Deputy Sheriff Shook, knowingly violated his clearly established First Amendment rights. The doctrine of qualified immunity protects governmental defendants "from undue interference with their duties and from potentially disabling threats of liability." *Elder v. Holloway*, 510 U.S. 510, 514 (1994). The doctrine applies unless Klein sufficiently pleads that these Defendants violated his "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). In accordance with this doctrine, government officials will be immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. This inquiry "must be undertaken in light of the specific context of the case." *Id.* at 201. Accordingly, "to decide whether a right was clearly established, a court must consider the state of the existing law at the time of the alleged violation and the circumstances confronting the officer to determine whether a reasonable state actor could have believed his conduct was lawful." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010). Courts may exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be

addressed first in consideration of the circumstances presented by the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Klein has plausibly alleged that (1) he suffered retaliation from his testimony at the disciplinary hearing and before the grand jury, and (2) at the time he was retaliated against it was clearly established law of which a reasonable Sheriff or Chief Deputy Sheriff would have known that such testimony could not be the basis of an adverse employment action by a public entity employer. The Supreme Court's "trilogy of political patronage cases" referenced above had all been decided well before the events described in the Amended Complaint, as had the Third Circuit's decision in *Reilly*, holding that such testimony qualifies as protected speech because a governmental employee acts as a citizen when giving such testimony. Accordingly this portion of Klein's § 1983 claim may proceed.

  c.  Punitive Damages Under the FMLA

Finally Defendants move to dismiss Klein's claim for punitive damages on his Family and Medical Leave Act claim. Although the Third Circuit has yet to address the subject of punitive damages in an FMLA claim, the statute itself lists the types of damages available and does not include punitive damages among them. 29 U.S.C. § 2617(a). Courts within the Third Circuit have repeatedly interpreted the FMLA to disallow claims for punitive damages. *See, e.g., Freeman v. Philadelphia Housing Auth.*, Civ. A. No. 12-1422, 2012 WL 3235323, at *10 (E.D. Pa. Aug. 8, 2012); *Cullison v. Dauphin Cnty., Pa.*, Civ. A. No. 10–705, 2012 WL 3027776, at *19 (M.D. Pa. May 18, 2012); *Haiden v. Greene Cnty. Career & Tech. Ctr.*, Civ. A. No. 08–1481, 2009 WL 2341922, at *4 (W.D. Pa. July 27, 2009); *Spain v. Colonial Penn Ins. Co.*, Civ. A. No. 97–4010, 1997 WL 773053, at *2-3 (E.D. Pa. Dec.12, 1997). Given this body of jurisprudence, and Klein's failure to make any argument to support a contrary position, this

Court likewise agrees that punitive damages are unavailable under the FMLA. As such, this portion of Defendants' Motion is granted and the claim for punitive damages under the FMLA is dismissed.

## IV. CONCLUSION

Defendants' Motion to Dismiss the Amended Complaint is granted in part.[7] Count I of the Amended Complaint, asserting a claim pursuant to 42 U.S.C. § 1983 is dismissed except to the extent that Klein alleges a violation of his free speech rights stemming from his termination by Defendants Donnelly and Shook as a result of his testimony at the Browndorf disciplinary hearing and his grand jury testimony regarding the Browndorf assault. The balance of Count I's allegations are dismissed as to all other Defendants. Klein's claim for punitive damages on Count III, his Family and Medical Leave Act claim, is also dismissed. The Motion is denied in all other respects. An appropriate order follows.

---

[7] Because Klein has already had the opportunity to amend his complaint in the face of the same arguments raised by Defendants in the instant Motion to Dismiss, and failed to correct the defects identified by Defendants and found valid herein, this Court finds no cause to grant an additional opportunity to amend the pleading.

17